Laura **ARIAS**, Petitioner,

v.

The **INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, Department of Labor and Employment, and Sung W. Oh, d/b/a Dunkin Donuts**, Respondents.

No. 92CA0491.

Colorado Court of Appeals, Div. III.

Feb. 25, 1993.

Ann M. la Plante, Greeley, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Dept. of Labor and Employment.

No appearance for respondent Sung W. Oh, d/b/a Dunkin Donuts.

Opinion by Judge CRISWELL.

Laura Arias (claimant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) which disqualified her from the receipt of unemployment compensation benefits. She argues that the Administrative Law Judge (ALJ) denied her procedural due process rights by failing to ask if she desired to present any witnesses and that the ALJ and the Panel applied the wrong legal standard in determining that a change in her working conditions was not substantial. We affirm.

Claimant was employed by a Dunkin Donut franchisee as a donut finisher for about 21 months before her termination. For some time, she and another employee had worked the late shift from 10:00 p.m. until 6:00 a.m.

About six weeks before her termination, a new owner bought the franchise at which claimant was employed. This new owner concluded that, because only about 5% of the sales occurred on the late night shift, it was unnecessary to have that shift manned by two employees. The other employee was, therefore, assigned to another shift, and claimant thereafter became solely responsible for performing the duties that the two employees had performed previously. According to the new owner's undisputed testimony, which was accepted by the ALJ, it is normal among similar franchises to use only one employee on such a shift.

After working this shift alone for about 30 days, and after being refused a raise in pay, claimant quit without giving a reason. When she applied for unemployment compensation benefits, however, she asserted that her voluntary termination resulted from a substantial change in her working conditions caused by her being required to work alone on the late night shift. Although another employee was physically present to bake the donuts, claimant asserted that, because she was required to wait on customers during this shift, she could not complete her donut-finishing work.

After an evidentiary hearing, the ALJ determined that the conditions under which claimant was required to work were "reasonable and normal for the industry." Hence, he concluded that claimant's benefits were required to be reduced pursuant to § 8–73–108(5)(e)(I), C.R.S. (1986 Repl. Vol. 3B).

I.

We reject claimant's procedural due process assertions.

■ The record here is undisputed that the notice of hearing received by claimant specifically advised her of her right to present the testimony of witnesses at the hearing. And, claimant does not assert that she was unaware of her right in that respect.

The record does not disclose that the ALJ specifically asked either party whether there were additional witnesses to be presented. However, on several occasions before the hearing was closed, the ALJ inquired whether the parties had anything further to present, and claimant responded in the negative.

The information contained in claimant's post-hearing appeal and affidavit was not presented to the ALJ and, therefore, cannot properly be considered by the Panel or this court. Section 8–74–104(2), C.R.S. (1986 Repl.Vol. 3B); *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App. 1988).

However, even that information merely notes that, before the hearing commenced, the employer was asked "whether he had brought anybody else with him to the hearing." This statement could well have referred to a hearing representative, rather than to a witness.

Finally, claimant admits that she knew of her right to call witnesses, had a witness accompany her to the hearing, but "got nervous at the hearing and did not realize" that the ALJ should have been informed of that fact.

Under these circumstances, the record does not reflect that claimant's due process rights were infringed upon by the ALJ.

## II.

We also reject claimant's argument that the Panel applied the wrong legal standard to her circumstances.

■ Section 8–73–108(4)(c), C.R.S. (1986 Repl.Vol. 3B) provides that an employee is entitled to a full award of benefits if the employment termination results from "unsatisfactory or hazardous working conditions when so determined by the division [of employment and training]." In deter-

mining whether unsatisfactory conditions exist, the division is enjoined to consider a number of factors, including "the working conditions of workers engaged in the same or similar work for the same and other employers in the locality...."

In a somewhat parallel provision, § 8–73–108(4)(d), C.R.S. (1986 Repl.Vol. 3B) provides that a full award is also justified if the employee's termination results from "[a] substantial change in the worker's working conditions...." However, it is provided that no substantial change in working conditions can be determined to exist if, after any change, the conditions that then prevail "are those generally prevailing for workers performing the same or similar work."

It is conceded that, in determining the existence of "unsatisfactory or hazardous conditions" under § 8–73–108(4)(c), the division must look to the conditions prevailing among other employers of like employees. Claimant argues, however, that, because § 8–73–108(4)(d), unlike § 8–73–108(4)(c), does not use the phrase "for the same or other employers," the division can compare a particular employee's working conditions only with the employees of the *same* employer in determining whether that employee's conditions have undergone a substantial change. We disagree.

From the face of these two provisions, we can discern only a single intent. If an employee asserts that the employment termination results either from unsatisfactory conditions or from a substantial change in conditions, the General Assembly intended that a full award would be granted only if the conditions complained about were less favorable to the employee than those prevailing among similar workers within the locality.

Indeed, any interpretation of § 8–73–108(4)(d) that permitted the division to compare a terminated employee's working conditions only with the conditions of employees of the same employer would lead to absurd results.

On the one hand, an employee whose working conditions were changed so that

they were substantially below local industry standards, would be denied benefits if it could be demonstrated that the same employer's other employees were *also* treated in such a miserly fashion. Under such interpretation, an employee would be entitled to benefits only if it could be established that the employee's termination resulted from the employer's discrimination against that employee. Nothing within either this particular legislative provision or the Employment Security Act as a whole permits the conclusion that it was intended to impose such an onerous burden upon a terminated employee. *See Hellen v. Industrial Commission,* 738 P.2d 64 (Colo. App.1987).

Conversely, under such a restrictive interpretation of the pertinent statute, an employee who continued to enjoy benefits greater than those enjoyed by similar workers in the local industry generally, even after a change in some of that employee's working conditions, could voluntarily quit the job and receive a full award of benefits, if that employee's conditions were not the same as his fellow employees. However, as we read the statute, this is precisely the specter that § 8–73–108(4)(d) was intended to prevent.

In short, whether it be "unsatisfactory conditions" under § 8–73–108(4)(c) or the "conditions that prevail" after a change under § 8–73–108(4)(d), the comparison, in either case, must include employees engaged in the same or similar work in the locality, whether employed by the same or by other employers.

The opinion in *Collins v. Industrial Claims Appeals Office,* 813 P.2d 804 (Colo. App.1991) does not demand a contrary conclusion. While that opinion refers to the finding of the hearing officer that all employees of the employers were subjected to similar changes in pay and working conditions, the basis for the decision in that case was that the claimant had accepted the changes. *See Jennings v. Industrial Commission,* 682 P.2d 518 (Colo.App.1984). The issue decided here was not discussed in *Collins.*

Hence, because the Panel and the ALJ applied the standard that we find to be proper under § 8–73–108(4)(d), the Panel's decision is entitled to affirmance.

Order affirmed.

ROTHENBERG and SMITH,* JJ., concur.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).