**Billy J. CAMPBELL, Jr., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of COLORADO and Autotron Products Inc., Respondents.**

No. 03CA0595.

Colorado Court of Appeals, Div. II.

Dec. 18, 2003.

As Modified on Denial of Rehearing Feb. 5, 2004.

Certiorari Denied Aug. 16, 2004.*

---

* Justice COATS would grant as to the following issue:

whether the lower court erred in applying an improper standard of review and reversing the Industrial Claim Appeals Office's finding that the unemployment claimant's working conditions were not objectively unsatisfactory under section 8-73-108(4)(c), C.R.S. (2003)

Law Offices of Gary A. Fisher, P.C., Gary A. Fisher, Boulder, Colorado, for Petitioner.

Ken Salazar, Attorney General, Y.E. Scott, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

No Appearance for Respondent Autotron Products Inc.

Opinion by Judge ROTHENBERG.

In this unemployment benefits case, petitioner, Billy J. Campbell, Jr. (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel) that reversed a hearing officer's decision awarding him such benefits. We set aside the order and remand with directions to reinstate the decision of the hearing officer.

## I. Background

Claimant was employed as a salaried shipping and warehouse manager for Autotron Products Inc. (employer) for eighteen years. His scheduled hours were from 7:30 a.m. to 4:00 p.m. Monday through Friday, or approximately forty hours per week. He worked at that schedule from June 1984 until May 30, 2002, when he resigned.

At the hearing, claimant testified, and the hearing officer found, that during the last two years of his employment, his work hours increased significantly. He testified that his employer required him to work ten to eleven hours daily, and another six to eight hours eighty percent of the Saturdays. The hearing officer found that while a typical work week for claimant was not necessarily forty hours per week, during his last two years on the job, he was working a "minimum" of sixty-six hours per week. He had not received a raise since July 1999, and he received no overtime pay.

Claimant testified that he reported the problem to his supervisor on several occasions, expressing his repeated concern that he could not be effective at his job without the help of additional shipping clerks. There

also was testimony that employer recognized the problem and tried to accommodate claimant, but was unable to do so because of the turnover at the warehouse.

The hearing officer granted claimant a full award of benefits pursuant to § 8–73–108(4)(c), C.R.S.2003, finding that he quit his job because of unsatisfactory working conditions.

On review, the Panel accepted the hearing officer's finding regarding the cause of claimant's separation, although it found he worked between fifty-six and sixty-three hours per week, rather than the minimum of sixty-six hours per week found by the hearing officer. However, the Panel overturned the conclusion of the hearing officer that claimant was entitled to benefits.

The Panel concluded (1) there was no basis in the record for the hearing officer's determination that claimant's working conditions were objectively unsatisfactory under § 8–73–108(4)(c); (2) the hearing officer's decision was based on limited evidence regarding the number of hours claimant worked; and (3) being required to work fifty-six to sixty-three hours per week does not, per se, constitute "unsatisfactory working conditions" within the meaning of the statute.

The Panel cited *Arias v. Indus. Claim Appeals Office,* 850 P.2d 161 (Colo.App.1993), for the proposition that the absence of evidence concerning the working conditions of similarly engaged workers did not preclude an award of benefits under § 8–73–108(4)(c). However, the Panel then concluded that:

> [The] limited evidence [in the record] fails to establish that the working conditions were objectively unsatisfactory based on the factors enumerated in the statute or other comparable considerations. Although the hearing officer found the claimant informed the employer that the claimant "could not" continue to work the hours, the claimant related this to his ability to be effective, and did not testify that he was somehow unable to continue working. Moreover, the hearing officer found that the employer was making attempts to obtain additional personnel, and there is no evidence the employer was dissatisfied with the claimant's performance.

The Panel disqualified claimant from the receipt of benefits pursuant to § 8–73–108(5)(e)(XXII), C.R.S.2003 (providing for disqualification when job separation results from quitting for personal reasons that do not support an award of benefits under other statutory provisions). Claimant appealed.

Employer has not participated in this appeal.

## II. Statutory Interpretation

Claimant contends the Panel erred in reversing the hearing officer's decision awarding him benefits under § 8–73–108(4)(c). We agree.

A court's primary task in construing a statute is to give effect to the intent of the General Assembly. Courts should interpret statutory terms in accordance with their plain and ordinary meaning, and a statute must be construed as a whole. Therefore, we must give consistent, harmonious, and sensible effect to all of its parts. *Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150 (Colo.App.1998); *Lymburn v. Symbios Logic,* 952 P.2d 831 (Colo.App.1997).

### A. Alternative Claims

First, we note that in the document entitled "Initial Request for Job Separation Information" that claimant filed with the Department of Labor and Employment, he checked off boxes indicating he was entitled to benefits for *either* unsatisfactory working conditions under § 8–73–108(4)(c) *or* for a substantial change in working conditions under § 8–73–108(4)(d).

However, the hearing officer only addressed claimant's entitlement to benefits for unsatisfactory working conditions under § 8–73–108(4)(c). Neither the hearing officer nor the Panel addressed whether claimant was also entitled to benefits for a substantial change in working conditions under § 8–73–108(4)(d). Likewise, claimant's entitlement under § 8–73–108(4)(d) was not raised by either party on appeal.

Therefore, we conclude the applicability of § 8–73–108(4)(d) is not before us.

## B. Standard of Review and Burden of Proof

Section 24-4-105(15)(b), C.R.S. (2003) provides, in part, that findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or hearing officer "shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to weight of evidence. *See Samaritan Inst. v. Prince-Walker*, 883 P.2d 3 (Colo. 1994); *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App.1988).

In *Samaritan Inst. v. Prince-Walker, supra*, 883 P.2d at 10, the supreme court explained:

> Unlike the substantial evidence standard, the Colorado APA weight of the evidence standard is phrased in the negative. . . . The negative phrasing of this standard establishes a baseline assumption that the hearing officer's findings of evidentiary fact are accurate. In situations in which the evidence could equally support alternative findings, the hearing officer's finding may not be set aside. The standard consequently places the "weight of the evidence" showing on the party challenging the hearing officer's findings, rather than on the party seeking to uphold those findings. accordingly, although this standard gives the agency's reviewing body direction to weigh the evidence independently, it forbids the reviewing body from substituting its determination for that of the hearing officer.

*See Federico v. Brannan Sand & Gravel Co.*, 788 p.2d 1268, 1273 (Colo. 1990)(holding that the court of appeals correctly set aside the Panel's findings because the Panel "instead of weighing the evidence pursuant to section 24-4-105(15)(b), submitted its own finding that the claimants had been permanently replaced").

■ Evidentiary facts are the raw historical data underlying the controversy whereas ultimate conclusions of fact are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties. The distinction between evidentiary fact and ultimate conclusion of fact is not always clear, but an ultimate conclusion of fact is as a general rule phrased in the language of the controlling statute or legal standard. *Federico v. Brannan Sand & Gravel Co., supra.*

■ Generally, in an unemployment compensation proceeding, the initial burden is on the claimant to establish a prima facie case of entitlement. As relevant here, the claimant must prove the employment separation was for a reason that would justify an award of benefits. *See Ward v. Indus. Claim Appeals Office*, 916 P.2d 605 (Colo. App.1995).

■ Once the claimant establishes a prima facie case, the burden of going forward shifts to the employer to demonstrate that claimant's termination was for a reason that would disqualify the claimant from the receipt of benefits. *Ward v. Indus. Claim Appeals Office, supra.*

## C. Unsatisfactory, Hazardous, and Changed Conditions

■ Section 8–73–108(4)(c) addresses both unsatisfactory and hazardous working conditions and permits the receipt of unemployment benefits for either condition. However, the statute includes certain provisions applicable to hazardous, but not unsatisfactory working conditions. It separately defines the term "hazardous working conditions," enumerates factors to be used in determining whether working conditions are hazardous, and limits the type of work that may be considered hazardous.

"No work shall be considered *hazardous* if the working conditions surrounding a worker's employment are the same or substantially the same as the working conditions generally prevailing among workers performing the same or similar work for other employers engaged in the same or similar type of activity." Section 8–73–108(4)(c). (Emphasis added.)

Section 8–73–108(4)(d) also permits an award of unemployment benefits if it is shown there is a "substantial change in the worker's working conditions, said change in working conditions being substantially less

favorable to the worker." Like the language in the hazardous working conditions portion of § 8–73–108(4)(c), § 8–73–108(4)(d) limits the type of change in working conditions that may be considered substantial.

"No change in working conditions shall be considered *substantial* if it is determined by the division that the conditions prevailing after the change are those generally prevailing for other workers performing the same or similar work." Section 8–73–108(4)(d). (Emphasis added.)

However, there is no provision in the unsatisfactory working conditions portion of § 8–73–108(4)(c) that requires any comparison with the conditions generally prevailing for other workers performing the same or similar work. The statute simply provides that in determining whether working conditions are unsatisfactory for an individual, a number of factors shall be considered:

the degree of risk involved to [the employee's] health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, the distance of the work from his residence, and the working conditions of workers engaged in the same or similar work for the same and other employers in the locality shall be considered.

Section 8–73–108(4)(c).

We view it as significant that where a claimant's separation is allegedly caused by hazardous working conditions under § 8–73–108(4)(c) or substantially changed working conditions under § 8–73–108(4)(d), the General Assembly specifically chose to disallow unemployment benefits if the conditions complained of were not less favorable to the employee than those prevailing among similar workers within the locality. However, the statute relating to unsatisfactory working conditions contains no such clause specifically prohibiting benefits.

Further, the statute relating to unsatisfactory working conditions refers to several factors, not all of which will be relevant in every case. The Panel acknowledged this fact in its order by stating that the evidence failed to establish the working conditions were objectively unsatisfactory "based on the factors enumerated in the statute *or other comparable considerations*" (emphasis added). The Panel's interpretation is consistent with § 8–73–108(4), C.R.S.2003, which states that a full award of benefits may be given to an employee for a number of reasons, including unsatisfactory working conditions, and further provides that "[t]he determination of whether or not the separation from employment shall result in a full award of benefits shall be the responsibility of the division. The following reasons shall be considered, *along with any other factors that may be pertinent to such determination* . . . ." (Emphasis added.)

■ Although we conclude the evidence here justified the hearing officer's award of benefits, we agree with the Panel that the factors listed in § 8–73–108(4)(c) are not all-inclusive and that other "comparable" factors may be considered if they are "pertinent to such determination."

■ Therefore, we read the statute as requiring that if any evidence of the enumerated factors is presented, such evidence must be considered in determining whether the working conditions were unsatisfactory. However, we further conclude, as did the Panel, that a claimant's failure to submit proof regarding the working conditions of workers engaged in the same or similar work for the same and other employers in the locality does *not* prevent an award of benefits under § 8–73–108(4)(c). *See Chris the Crazy Trader, Inc. v. Indus. Claim Appeals Office,* 81 P.3d 1148, 1150 (Colo.App.2003)(holding that § 8–73–108(4)(d) does not impose upon the Panel an affirmative obligation to seek and obtain evidence of prevailing conditions "for other workers performing the same or similar work"); *see also Hellen v. Indus. Comm'n,* 738 P.2d 64 (Colo.App.1987).

Accordingly, here, we conclude that claimant's failure to submit proof regarding the working conditions of workers engaged in the same or similar work for the same and other employers in the locality did not prevent him from receiving an award of benefits for unsatisfactory working conditions, provided that he otherwise presented sufficient evidence to satisfy the statute.

We base our conclusion on the plain language of the statute, and we therefore need not resort to legislative history. *See Lymburn v. Symbios Logic, supra.* Nevertheless, we observe that § 8–73–108(4)(c) and (d) have remained unchanged in substance since their enactment in 1963, and no relevant legislative history exists on the General Assembly's intent as to these provisions. *See* Colo. Sess. Laws 1963, ch. 188, § 82–4–9(3)(b)(ii)–(iii) at 670–71.

While we agree with the Panel that the absence of evidence concerning the working conditions of similarly engaged workers does not preclude an award of benefits for unsatisfactory working conditions, we disagree that this conclusion can be extrapolated from *Arias v. Indus. Claim Appeals Office, supra.*

In *Arias*, the claimant was employed by a donut franchisee and worked on the night shift with another employee. When the other employee was reassigned, the claimant became solely responsible for performing the duties the two had previously performed. After working the shift alone for about a month without a raise, the claimant quit. She later sought unemployment benefits, asserting that her voluntary termination resulted from a substantial change of working conditions.

At the evidentiary hearing, the employer's testimony—which the ALJ found credible—was that it was normal among similar franchises to use only one employee on such a shift. Based on that evidence, the ALJ found the conditions under which the claimant worked were "reasonable and normal for the industry" and disqualified her from receiving benefits. *Arias v. Indus. Claim Appeals Office, supra,* 850 P.2d at 162. A division of this court affirmed, relying on § 8–73–108(4)(d).

In *Arias*, the claimant did not allege unsatisfactory working conditions under § 8–73–108(4)(c), but claimed her working conditions had substantially changed within the meaning of § 8–73–108(4)(d). The specific issue before the court was her contention that, in determining whether her work conditions had substantially changed, the division could compare her working conditions *only* with

employees of the same employer. The division rejected the argument, stating:

> From the face of these two provisions [comparing "unsatisfactory" conditions under § 8–73–108(4)(c) with "prevailing conditions" under § 8–73–108(4)(d) ], we can discern only a single intent. If an employee asserts that the employment termination results either from unsatisfactory conditions or from a substantial change in conditions, the General Assembly intended that a full award would be granted only if the conditions complained about were less favorable to the employee than those prevailing among similar workers within the locality.

*Arias v. Indus. Claim Appeals Office, supra,* 850 P.2d at 163.

Because the claimant in *Arias* was not seeking benefits based upon unsatisfactory working conditions, we view any discussion of such working conditions as dictum. Further, the parties there conceded, and the division assumed, that in determining the existence of unsatisfactory or hazardous conditions, the division was required to look to the conditions prevailing among other employers of like employees.

The *Arias* court refused to adopt a statutory interpretation unfair to the employee, explaining that "[n]othing within either this particular legislative provision or the [Workers' Compensation Act] as a whole permits the conclusion that it was intended to impose such an onerous burden upon a terminated employee." *Arias v. Indus. Claim Appeals Office, supra,* 850 P.2d at 164. The court thus recognized that unemployment compensation hearings are designed to be informal and expeditious, *see* § 8–74–101, et seq., C.R.S.2003, and it would impose an onerous burden on an employee to present evidence that is not directly relevant to the circumstances of his or her separation from employment.

The *Arias* court did not discuss the burden of proof, but there, the employer presented evidence that it was following the standard practices of other franchises. In contrast, at the hearing in this case, employer did not present any such evidence, or even assert that other similarly situated employees were

working more than sixty hours per week as claimant had been doing for over two years. Employer's witnesses acknowledged claimant's problem of working excessive hours, but stated that their attempts to remedy the problem were unsuccessful. Employer's only defense at the hearing was that claimant quit for personal reasons.

Because of these factors and because *Arias* focused on § 8–73–108(4)(d), we do not read that decision as holding that the absence of evidence concerning the working conditions of similarly engaged workers either precludes or does not preclude an award of benefits for unsatisfactory working conditions under § 8–73–108(4)(c).

### III. Weight of the Evidence

■ Turning to the statutory factors mentioned in § 8–73–108(4)(c), we conclude the hearing officer's determination that claimant's working conditions were objectively unsatisfactory was not contrary to the weight of the evidence. Thus, the Panel erred in disturbing the conclusion of the hearing officer.

■ A claimant's subjective determination that working conditions are unsatisfactory is insufficient. Rather, a reasonableness standard is applied in light of the claimant's particular circumstances, including those set forth in the statute. *See Rodco Sys., Inc. v. Indus. Claim Appeals Office*, 981 P.2d 699 (Colo.App.1999).

In this case, it was undisputed that claimant worked for employer for eighteen years, and that the hours he was required to work increased significantly during his last two years on the job. The hearing officer found that "the claimant was generally working half again as many hours as anticipated in the normal 40 hour workweek, and informed the employer that he could not continue to work that many hours . . . ."

First, this is unlike the situation where an employee, when hired, is fully aware of the hours, pay, or responsibility that he or she is accepting. *See* § 8–73–108(5)(e)(I), C.R.S. 2003 (disqualifying employee from receiving benefits if the employee quits because of dissatisfaction with "standard working conditions"); *cf. Heidelberg Township v. Unem-*

*ployment Comp. Bd. of Review*, 94 Pa. Cmwlth. 108, 503 A.2d 462, 464 (1986)(claimant admitted initial suitability of conditions of employment by voluntarily accepting employment).

Second, there was evidence that claimant repeatedly requested help from employer during the last two years, and that employer recognized the problem. Claimant did not simply walk off the job.

Third, claimant presented evidence that the excessive hours affected him. In his letter of resignation, he stated that his work hours made it difficult to "give attention to [his] person[a]l life," and he also testified at the hearing that he could no longer do the job. The hearing officer noted the detrimental effects on claimant's personal life, his inability to do the job, and his unsuccessful efforts to obtain help from his employer. And, the hearing officer specifically referred to the claimant's written resignation which recited "the fact that he could not continue to put in the hours that he did and be effective," "the lack of attention that [claimant] could give to his personal life, and the necessity of making a change."

The hearing officer's conclusion that claimant quit due to unsatisfactory working conditions thus credited claimant's testimony, necessarily inferred that he acted reasonably, and rejected employer's argument that claimant quit for other reasons. *See Tilley v. Indus. Claims Appeals Office*, 924 P.2d 1173 (Colo.App.1996)(In unemployment insurance cases, it is the hearing officer's responsibility to assess the credibility of witnesses, resolve any conflicts in the evidence, and determine the weight to be accorded the evidence).

We therefore conclude claimant met his initial burden of establishing a prima facie case of entitlement because he showed his separation was for a reason that would justify an award of benefits. Once he established a prima facie case, the burden of going forward shifted to employer to demonstrate that claimant resigned for a reason that would disqualify him from the receipt of benefits. *See Ward v. Indus. Claim Appeals Office, supra.*

Employer's witnesses merely stated their belief that claimant quit for personal reasons. Employer did not present any evidence or argument at the hearing that other similarly situated employees were working similar hours. *See Chris the Crazy Trader, Inc. v. Indus. Claim Appeals Office, supra.*

■ Contrary to the Panel's statement, the fact that employer was not dissatisfied with claimant's performance was irrelevant to whether his working conditions were objectively unsatisfactory. As the court explained in *Manning v. State Unemployment Appeals Commission*, 787 So.2d 954, 955 (Fla.Dist.Ct.App.2001), "It does not matter that the employer was entitled to change the employee's hours under the employment agreement. The employer's right to change the conditions of employment is relevant to whether a breach of the employment contract occurred, but is not relevant to the employee's entitlement to unemployment compensation."

■ We have found no reported Colorado decisions in which employees have quit because of the employer's unilateral increase in working hours and then sought unemployment benefits. However, other states have addressed the issue relying upon analogous, though not identical, provisions of their unemployment compensation statutes.

Most state courts that have addressed the issue have deferred to the fact finder, but have reviewed the question of the sufficiency of evidence as a matter of law. *See Chavez (Token) v. Unemployment Comp. Bd. of Review*, 738 A.2d 77, 80 (Pa.Commonw.Ct.1999) (whether an employer's unilateral change in the terms and conditions of employment provides a necessitous and compelling reason for employees to leave work is generally a question of law).

For example, in *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978), the Minnesota Supreme Court reversed a decision denying the claimant benefits where the court concluded the employer made impossible demands on the employee that no one person could be expected to meet.

There, the claimant's work hours increased and had more than doubled when he quit, and he accepted the change and continued to work until, "[a]s a result of the long hours, and what claimant felt was a lack of cooperation on the part of the employer, [he] quit this employment voluntarily." *Zepp v. Arthur Treacher Fish & Chips, supra*, 272 N.W.2d at 263. The court added:

The fact that employee ... tried to do so before he finally quit because of the excessive demands upon him suggests that he is unusually conscientious and industrious. He should not be penalized for those traits, nor should the employer be rewarded for its treatment of him....

*Zepp v. Arthur Treacher Fish & Chips Inc., supra. See Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662 (Minn.App.1985)(employee entitled to unemployment compensation benefits where his work hours and responsibilities increased significantly without any increase in salary).

Other courts have similarly concluded that an increase in hours which result in making excessive demands on an employee may constitute "good cause attributable to the employer" and justify an employee to resign, but nevertheless remain eligible for an award of unemployment benefits. *See Manning v. State Unemployment Appeals Comm'n, supra.*

In Pennsylvania, the relevant statutes permit employees to collect unemployment compensation benefits if they leave work for a necessitous and compelling reason. This requirement may be met by an employer's unilateral imposition of a significant change in the terms and conditions of employment that place excessive demands upon the employee. *Chavez (Token) v. Unemployment Comp. Bd. of Review, supra.* Nevertheless, the Pennsylvania court has recognized "[t]here is no talismanic percentage to determine when an employer's unilateral changes in the terms and conditions of employment are substantial; rather, each case must be examined under its own attendant circumstances." *Chavez (Token) v. Unemployment Comp. Bd. of Review, supra*, 738 A.2d at 82.

We agree with the rationale of these decisions and similarly conclude that a claimant

may receive a full award of benefits, pursuant to § 8–73–108(4)(c), under such circumstances, provided he or she presents evidence that the working conditions were objectively unsatisfactory.

Here, claimant presented evidence, which was accepted by the fact finder, that his sixty-hour workweeks were taking a toll on him such that he felt he could no longer perform the job; that the schedule was not consistent with his training, experience, and prior earnings; and that during the last two years his employer had unilaterally increased his work hours by at least fifty percent with no overtime or increase in pay which placed excessive demands upon claimant.

We therefore conclude the hearing officer's determination that claimant's working conditions were objectively unsatisfactory under § 8-73-108(4)(c) was not contrary to the weight of the evidence, and the Panel thus erred in disqualifying him from benefits. See *Samaritan Inst. v. Prince-Walker, supra.*

The order is set aside, and the case is remanded with directions to reinstate the order of the hearing officer.

Judge MARQUEZ concurs.

Judge GRAHAM dissents.

Judge GRAHAM dissenting.

In my view, the Panel correctly applied Colorado law in concluding "that this limited evidence fails to establish that the working conditions were objectively unsatisfactory based on the factors enumerated in the statute or other comparable considerations." The Panel ruled that "working between 56 and 63 hours per week does not, *per se,* constitute 'unsatisfactory working conditions.' " I believe that, as a practical result, the majority's opinion establishes such a rule and rejects outright the holding of another division of this court in *Arias v. Indus. Appeals Office,* 850 P.2d 161 (Colo.App.1993). Therefore, I respectfully dissent.

I fear that the majority opinion will be cited for the proposition that a showing of increased working hours by a salaried employee (the record shows those hours were

approximately fifty-six per week) constitutes objective proof of a substantial change justifying an award, without proof of the working conditions of similar employees working for similar employers.

In my view, the majority also incorrectly distinguishes *Arias,* and relies upon law that is not applicable to the unique Colorado statutory language at issue. I also disagree that there is evidence of any objectively unsatisfactory working condition.

*Arias* dealt directly with the language of § 8–73–108(4)(c) and (d), construing them together, and the division there concluded that "the General Assembly intended that a full award would be granted *only* if the conditions complained about were less favorable to the employee than those prevailing among similar workers within the locality." *Arias v. Indus. Appeals Office, supra,* 850 P.2d at 163. (Emphasis added.)

In reaching its conclusion, the *Arias* division determined that there was but a single intent in the two provisions, even though § 8–73–108(4)(c) requires the hearing officer to consider "the working conditions of workers engaged in the same or similar work for the same and other employers in the locality" and subsection § 8–73–108(4)(d) requires the hearing officer to consider whether a change in conditions is still in accordance with "those generally prevailing for workers performing the same or similar work." The division rejected the employee's argument that the hearing officer should have compared a particular employee's working conditions only with the employees of the same employer in determining whether that employee's conditions had undergone a substantial change. In doing so, the division in *Arias* interpreted and applied both § 8–73–108(4)(c) and (d). Both subsections disallow an award in the absence of proof that the conditions—hazardous, unsatisfactory, or changed—are objectively unique when compared to the community. I disagree that this finding was dictum.

The majority draws a distinction between unsatisfactory working conditions and hazardous working conditions under § 8–73–108(4)(c) because the General Assembly said that "[n]o work shall be considered hazard-

ous if the working conditions surrounding a workers' employment are the same or substantially the same as the working conditions generally prevailing among workers performing the same or similar work for other employers engaged in the same of similar type of activity." The majority also notes that § 8–73–108(4)(d) contains similar language in its provision that "[n]o change in working conditions shall be considered substantial if it is determined ... that the conditions prevailing after the change are those generally prevailing for other workers performing the same or similar work."

Because similar language does not preface the unsatisfactory working conditions component of § 8–73–108(4)(c), the majority concludes that "a number of factors" may be considered in determining whether working conditions are unsatisfactory. In my view, § 8–73–108(4)(c)'s requirement that "the working conditions of workers engaged in the same or similar work for the same and other employers in the locality *shall* be considered" when the hearing officer determines "whether or not working conditions are unsatisfactory" is the functional equivalent of the other language in the two sections. Section 8–73–108(4)(c). (Emphasis added.) This language communicates a "single intent." *Arias v. Indus. Appeals Office, supra,* 850 P.2d at 163. "[W]hether it be "unsatisfactory conditions" under § 8–73–108(4)(c) or the 'conditions that prevail' after a change under § 8–73–108(4)(d), the comparison, in either case *must include* employees engaged in the same or similar work in the locality...." *Arias v. Indus. Appeals Office, supra,* 850 P.2d at 164. (Emphasis added.)

In my view, claimant here failed to establish either objectively unsatisfactory working conditions under § 8–73–108(4)(c), C.R.S. 2003, or an objectively substantial change in working conditions under § 8–73–108(4)(d), C.R.S.2003. Because his claim was denied at the deputy level under § 8–73–108(5)(e), C.R.S.2003, when he proceeded to the de novo hearing before the hearing officer, he had the burden of proof. The majority's suggestion that the employer had a burden in this case, in my view, is also contrary to the clear language of the statute and cannot rest on the authority of *Chris the Crazy Trader, Inc. v. Indus. Claim Appeals Office,* 81 P.3d 1148 (Colo.App.2003). That case does not hold that the burden is on the employer to present evidence of similar working conditions. Nothing in the statute suggests that the employer is required to prove similar circumstances either as an affirmative defense or part of its defense.

Although *Chris the Crazy Trader* holds that the hearing officer is not required to review evidence which has not been produced by the parties, it does not stand for the proposition that the employer must shoulder this burden in the absence of the claimant's showing a prima facie case.

Relying upon cases from Florida, Minnesota, and Pennsylvania, even though none of those states has the statutory mandate adopted by our General Assembly, the majority concludes that a unilateral increase in the employee's working hours may constitute unsatisfactory working conditions without proof of similar employees' circumstances. However, the cases cited by the majority did not deal with statutes like § 8–73–108.

Although the majority finds substantial evidence that the claimant's working conditions were objectively unsatisfactory under § 8–73–108(4)(c), I can find nothing in the record before us to support that holding. Indeed, the lack of such evidence is the basis for the Panel's decision to reverse the hearing officer. The majority in effect concedes that there was no objective evidence to support the hearing officer's decision by concluding that the absence of evidence concerning the working conditions of similarly engaged workers does not preclude an award of benefits.

Here, as the Panel ruled, the evidence is so slim that no prima facie case was made by claimant. Therefore, this appeal challenges the Panel's resolution of an ultimate conclusion of fact, and as a reviewing court, we must determine whether there is substantial evidence, or a lack thereof, in the record as a whole to support that conclusion. *See Samaritan Inst. v. Prince-Walker,* 883 P.2d 3 (Colo.1994).

Furthermore, we are authorized to set aside the Panel's decision if it misinterprets the law under § 8–74–107(6)(d), C.R.S.2003. Here, the Panel's ultimate conclusion applied the absence of facts to the law. The Panel has considerable expertise in unemployment matters, and its conclusions ought to be given deference.

In any event, I would not place the blame for the lack of evidence upon employer, because I continue to believe that one who seeks an award against an employer bears the burden of proving his claim and must first establish a claim prima facie.

I therefore would affirm the Panel's order.