**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joshua Vigil TORRES, Defendant–Appellant.**

**No. 03CA2480.**

Colorado Court of Appeals, Div. I.

March 19, 2009.

John W. Suthers, Attorney General, Jennifer A. Berman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Ayers Law Firm, P.C., Gwyneth Ayers, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Joshua Vigil Torres, appeals the trial court's judgment of conviction entered upon jury verdicts finding him guilty of attempted first degree murder with extreme indifference, attempted second degree murder, reckless endangerment, felony menacing, aggravated first degree motor vehicle theft, vehicular eluding, and driving under

suspension of license. Additionally, the trial court determined Torres was a habitual criminal, and he appeals his sentence. We reverse the judgment of conviction as to the reckless endangerment offense and vacate the accompanying sentence, but affirm in all other respects. We remand for correction of the mittimus.

## I. Background

Aurora Police Department Officer Jad Lanigan responded to a call in July 2001 about a domestic dispute at a residence on South Biscay Way involving Torres. Officer Lanigan knew Torres was involved in an incident the previous month in which he had fled from the police and attempted to run over a fellow officer.

The police dispatcher reported that Torres had left the residence in a stolen sport utility vehicle (SUV) and gave its description. Torres then led the police on a three-part, twenty-seven-mile chase through Aurora in the SUV.

First, Officer Lanigan saw an SUV matching the description near Sunburst Park. Believing the suspect might flee on foot or by car, Officer Lanigan activated his patrol lights and pulled up near the SUV. Officer Lanigan looked directly at the driver, who matched Torres's description given over the radio. Torres immediately accelerated, driving over a curb and through the grassy area of the park. Officers Adolfo Ramirez and Christian Lertch arrived at the park by this time and witnessed two young girls with bicycles running to "get out of the way" when Torres drove directly in their path. Officers Lanigan, Ramirez, and Lertch pursued the SUV as it left the park.

Second, Torres continued driving at high rates of speed with three police cars chasing him until he entered a cul-de-sac in a residential area, where a neighborhood couple was outside with their daughter and a dog. Because the cul-de-sac was not a through street, Torres backed up and turned around. The officers attempted to block him in the cul-de-sac with their police cars. Officers Lertch and Lanigan exited their vehicles and pointed their guns towards the SUV. Officer Lertch identified himself as a police officer and ordered Torres to stop. Instead, Torres turned the SUV around and accelerated.

Officer Lanigan testified that Torres accelerated directly toward him. He testified that he fired three shots at Torres inside the SUV because he thought Torres intended to hit him. At least one of Lanigan's shots hit and injured Torres inside the SUV.

Third, Torres maneuvered the SUV out of the cul-de-sac and the officers continued to pursue him. According to witnesses, Torres drove at high rates of speed through residential areas, failed to stop at stop signs and red lights, and swerved around other vehicles in traffic. At one intersection, Torres hit two other vehicles as he attempted to drive between them. At another point, Torres crossed a median and drove westbound in the eastbound traffic lane.

The police eventually called off the chase. Torres stopped at a 7–Eleven in Denver, where he asked customers for help because he had been wounded by the gunshots and was bleeding. Once inside the 7–Eleven, Torres lay down and shortly thereafter was apprehended by the police and taken to the hospital.

At trial, the prosecution called Robert Maldonado, an inmate who had been in a holding cell with Torres prior to a court appearance. Maldonado testified that Torres told him that his court appearance was because "the police had shot at him and he tried to take off" and that "he tried to get away, tried to run [the officer] over."

After the jury returned guilty verdicts on October 25, 2002, the trial court sentenced Torres to an aggregate of 156 years in the Colorado Department of Corrections based on concurrent and consecutive sentencing of the various convictions. Torres appeals the trial court's judgment of conviction and sentence.

## II. Constitutional Vagueness Challenge

■ Torres contends that the trial court violated his constitutional rights to due process and equal protection because the charge of attempted first degree murder with extreme indifference was vague as applied to

him. We decline to address this contention because we cannot determine the constitutionality of an as applied challenge without a complete record of relevant facts. *People v. Patrick,* 772 P.2d 98, 100 (Colo.1989); *see also People v. Cooper,* 205 P.3d 475, 478 (Colo.App. 2008) (declining to address an as applied challenge because the defendant did not raise the constitutional issue before the trial court); *People v. Veren,* 140 P.3d 131, 140 (Colo.App.2005) (same); *People v. McNeely,* 68 P.3d 540, 545 (Colo.App.2002) (same for equal protection claim).

Because Torres first raised this issue on appeal, the trial court did not make findings of fact concerning his due process and equal protection claims, specifically, concerning the identification of actual or potential victims. Therefore, we will not address this contention.

## III. Impartial Jury

Torres contends that the trial court erred in denying his motion for a mistrial because a juror had not disclosed certain facts on the juror questionnaire, violating his constitutional due process right to a fair trial. We disagree.

■ Torres argues that we should apply a de novo standard of review because he raises an issue of mixed law and fact that implicates his constitutional rights. However, we review a trial court's ruling on a motion for a mistrial, based on a juror's nondisclosure discovered after trial, for abuse of discretion. *McNeely,* 68 P.3d at 543–44; *see also People v. Drake,* 841 P.2d 364, 366–67 (Colo.App. 1992) (applying an abuse of discretion standard in determining whether prejudice has occurred because of juror misconduct); *People v. Evans,* 710 P.2d 1167, 1168 (Colo.App. 1985) (same).

■ A juror's nondisclosure of information during jury selection may be grounds for a new trial when a juror *deliberately* misrepresents important biographical information relevant to a defendant's challenge for cause or a peremptory challenge. *People v. Dunoyair,* 660 P.2d 890, 895 (Colo.1983). However, if the juror's nondisclosure was *inadvertent,* the defendant must show that the

nondisclosure created an actual bias in favor of the prosecution or against the defendant. *People v. Christopher,* 896 P.2d 876, 879–80 (Colo.1995). Absent this showing, we will assume that the juror followed the court's instructions and decided the case solely on the basis of the evidence and the law. *Dunoyair,* 660 P.2d at 895.

■ Here, the potential jurors were asked to complete a jury questionnaire as part of the voir dire process. Two jurors testified at a post-trial hearing that they remembered one juror had mentioned having family members who were police officers. Although the jurors could not remember the name of the other juror, they described Juror H.

At a hearing held on the matter, Juror H testified that he had two out-of-state relatives who were former police officers. After reviewing his questionnaire, he further stated that he did not answer the question, "Friends or relatives who work in law enforcement, for the courts, or are attorneys? (Who and what agency)." He explained that he was late for jury service, rushed through the questionnaire, did not have his glasses, and did not believe the information was pertinent because one of the relatives was deceased, the other lived in Alabama, and he had not had contact with him for many years.

The trial court found that Juror H's nondisclosure was inadvertent, the undisclosed information was not material, and it did not prejudice Torres. Further, it noted that the present-tense nature of the question did not require disclosure by the juror because the juror's family members had been involved in law enforcement in the past. Additionally, Torres did not show Juror H's nondisclosure had any prejudicial effect on the outcome of the trial.

We defer to the trial court's factual findings because they are supported by competent evidence in the record. Based on those findings, we conclude the trial court did not abuse its discretion in denying the motion for a mistrial.

## IV. Evidentiary Issues

### A. CRE 404(b) Prior Act Evidence

Torres contends that the trial court abused its discretion in admitting evidence of a prior

incident in which he tried to run a police car off the road. We disagree.

We review the trial court's admission of evidence for an abuse of discretion and will not disturb its ruling unless it was manifestly arbitrary, unreasonable, or unfair. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002).

Under CRE 404(b), a defendant's prior act cannot be admitted to prove the character of the defendant to show that he or she acted in conformity with that character on a particular occasion, but it can be admitted for other purposes if the trial court has determined that the prior act occurred, and that the evidence satisfies the four-prong test in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990). *See Kinney v. People*, 187 P.3d 548, 554 (Colo.2008); *Rath*, 44 P.3d at 1038–39; *People v. Cousins*, 181 P.3d 365, 370 (Colo.App. 2007).

■ *Spoto* requires that the prior act evidence (1) relate to a material fact; (2) be logically relevant; (3) have a logical relevance independent of an intermediate inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) have probative value that is not substantially outweighed by the danger of unfair prejudice. *Spoto*, 795 P.2d at 1318.

Here, Sergeant Fred Parker testified that on June 22, 2001, approximately one month prior to the police chase, Torres tried to run his police car off the road. Sergeant Parker explained that he was dispatched to investigate a disturbance when he saw Torres enter a red Jeep. He turned to follow the Jeep, and immediately Torres did a "power spin," quickly turning the Jeep around to face Parker's police vehicle. Parker turned on his overhead lights and drove toward Torres in the Jeep. Simultaneously, Torres drove toward Parker. As the two vehicles approached each other head-on, Parker swerved onto a sidewalk to avoid being hit by Torres.

Prior to trial, the court ruled that this prior act evidence was admissible, finding that the act occurred based on the preponderance of the evidence and that it satisfied the *Spoto* test.

Initially, Torres argues that the evidence was not admissible to prove identity. However, the trial court did not admit the evidence for identity, but rather to show intent, knowledge, modus operandi, and absence of mistake.

The crux of Torres's CRE 404(b) argument is that the evidence should have been excluded under prongs three and four of the *Spoto* test because its logical relevance depended entirely on the inference that he acted in conformity with bad character and because it was highly prejudicial.

■ The trial court ruled under the third prong that the evidence showed an intermediate inference that Torres had a bad character, but added that any prejudice resulting therefrom would be cured by a cautionary instruction to the jury, which the trial court gave both when evidence of the prior incident was introduced and in the final jury instructions. In any event, the *Spoto* test does not require the absence of the inference of bad character, but merely requires that the evidence be logically relevant independent of that inference. *People v. Snyder*, 874 P.2d 1076, 1080 (Colo.1994).

Here, the prior act evidence was logically relevant independent of the inference of bad character because it was probative of Torres's modus operandi (driving recklessly to escape police), knowledge (that he was going towards a police officer), intent (to harm police officers), and lack of mistake (that he was driving towards a police officer) with respect to the charges concerning his attempt to hit Officer Lanigan's patrol car.

Under the fourth prong, the trial court ruled that, considering the similarities between the two incidents, the probative value of the prior act was not substantially outweighed by its potentially prejudicial effect.

■■ The trial court did not abuse its discretion in concluding that the similarity of Torres's prior attempt to run a police car off the road showed that it was more probable than not that Torres attempted to run over Officer Lanigan. Because CRE 403 strongly favors admission of relevant evidence, we afford prior act evidence the maximum pro-

bative value and the minimum prejudicial effect in assessing its admissibility. *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995).

Therefore, the trial court did not abuse its discretion in admitting the prior act evidence.

### B. Police Chase Recording

Torres next argues that the trial court abused its discretion in admitting the audio recording of the police chase because (a) it contained incorrect allegations against him, (b) it contained statements of his prior acts, and (c) the Court's limiting instruction was incorrect and inadequate. We disagree.

We review the trial court's ruling on the admission of tape recording evidence for abuse of discretion. *People v. Armijo*, 179 P.3d 134, 138 (Colo.App.2007).

The tape recording included the audio communications over the police radio during the chase. The recording included statements, later proved incorrect, that Torres was wanted on warrants for the June incident and for a felony. No warrant had yet issued for the June incident and the felony warrant should have been quashed and was erroneously on his record.

Before the recording was played for the jury, the court gave a limiting instruction about the information and the erroneous warrant, stating:

> Regarding the transcript marked as Exhibit 42–A, you are advised that all of the information contained between Page 14, which at the bottom should be your first page, to the top two lines of Page 20 …, all that information is not being offered for the truth of what is being said therein, it is only offered for what information the officers heard as the events unfolded.
>
> Further, I take judicial notice of the fact that the felony warrant, $15,000 bond phrase found in the second line of page 20—I'll give you a moment to find that—felony warrant, $15,000 bond, was actually an error of the court an[d] was not an error of the Aurora Police Department. Furthermore, I also take judicial notice that on this date, meaning the date this incident occurred, there was not an outstanding arrest warrant for the incident

involving Sergeant Parker on June 22 of 2001.

To the extent that the recording contained information of Torres's prior acts on June 22, we concluded above that the information was admissible for limited purposes, such as to show Torres's knowledge that he was attempting to run a police officer off the road.

As to the felony warrant, the trial court told the jurors that it was an error of the court. Thus, the limiting instruction properly cured any potential prejudice from the admission of erroneous information on the tape recording. We presume that the jury followed the court's instructions. *See People v. Trujillo*, 83 P.3d 642, 648 (Colo.2004).

## V. Merger

Torres makes three merger arguments. He contends that the trial court erred because (1) the attempted second degree murder conviction should have merged with the conviction for attempted first degree murder with extreme indifference; (2) the menacing conviction should have merged with the conviction for attempted second degree murder, and (3) the reckless endangerment conviction should have merged with the conviction for attempted first degree murder with extreme indifference. We agree with the third argument but disagree with the first two.

We review de novo whether merger applies to criminal offenses because it is an issue of statutory interpretation. *See, e.g., People v. Leske*, 957 P.2d 1030, 1035 (Colo. 1998); *Armintrout v. People*, 864 P.2d 576, 578 (Colo.1993); *People v. Skinner*, 825 P.2d 1045, 1046–47 (Colo.App.1991).

A defendant may be convicted of multiple offenses arising out of a single transaction if the defendant has violated more than one statute, *Armintrout*, 864 P.2d at 578, unless one offense is included in the other. § 18–1–408(1)(a), C.R.S.2008.

We compare the elements of the statutes involved, and not the evidence presented at trial, to determine whether one offense is a lesser included offense of another. *Armintrout*, 864 P.2d at 579. The "strict

elements" test for merger is met if establishment of the essential elements of the greater offense necessarily establishes *all* the elements of the other offense. *Skinner*, 825 P.2d at 1046 (citing *People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974)).

### A. Attempted Second Degree Murder and Attempted First Degree Murder with Extreme Indifference

 Second degree murder may be a lesser included offense of extreme indifference murder. *People v. Rodriguez*, 888 P.2d 278, 284 (Colo.App.1994). A defendant may not be convicted of both offenses with respect to the same victim. *People v. Lee*, 914 P.2d 441, 446–48 (Colo.App.1995).

 Here, Officer Lanigan was the specific victim of the attempted second degree murder, which was submitted to the jury as a lesser offense of attempted first degree murder after deliberation. Conversely, the other officers, and bystanders whose lives were placed at risk during the high-speed chase were the victims of the attempted first degree murder with extreme indifference. Thus, because the offenses had different victims, the attempted second degree murder conviction did not merge with the conviction for attempted first degree murder with extreme indifference. *See People v. Lucero*, 985 P.2d 87, 93 (Colo.App.1999) (when crimes have different victims, there is no merger).

### B. Felony Menacing and Attempted Second Degree Murder

 Next, we reject Torres's argument that felony menacing is a lesser included offense of attempted second degree murder because it contains at least one element not required for attempted second degree murder.

Attempted second degree murder requires that a defendant (1) act with the kind of culpability otherwise required for commission of second degree murder, which is "knowingly," and (2) engage in conduct constituting a substantial step toward the commission of second degree murder, which is to "cause[ ] the death of a person." §§ 18–2–101, 18–3–103, C.R.S.2008.

Menacing requires that a defendant, by any threat or physical action, knowingly places or attempts to place another person in fear of imminent serious bodily injury. It is a class five felony if committed by the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon. § 18–3–206, C.R.S.2008.

Whether felony menacing is a lesser included offense of attempted second degree murder is an issue of first impression in Colorado. Although a division of this court has affirmed a defendant's conviction of both these offenses, it did so without addressing the issue of merger. *People v. Thompson*, 121 P.3d 273 (Colo.App.2005).

The offense of second degree murder does not establish every element of felony menacing. Attempted second degree murder requires a defendant to knowingly engage in conduct that is a substantial step toward causing the death of a person. There is no requirement that the victim be in fear of imminent serious bodily injury. Thus, an attempted second degree murder conviction does not *necessarily* establish all the elements of menacing.

Therefore, Torres's conviction for felony menacing does not merge into his conviction for attempted second degree murder.

### C. Reckless Endangerment and Attempted First Degree Murder with Extreme Indifference

Finally, Torres argues, the People concede, and we agree, that the reckless endangerment conviction should merge into the conviction for attempted first degree murder with extreme indifference. *See People v. Delgado–Elizarras*, 131 P.3d 1110, 1115 (Colo.App.2005) (holding that reckless endangerment is a lesser *included* offense of attempted first degree murder).

Accordingly, we reverse the judgment of conviction of reckless endangerment and vacate its corresponding sentence.

### VI. Consecutive or Concurrent Sentencing

 Torres contends that the trial court erred in imposing consecutive sentences for

attempted first degree murder with extreme indifference and attempted second degree murder. We disagree.

Sentencing is usually a discretionary function of the trial court, reviewed for an abuse of discretion. *People v. Beatty,* 80 P.3d 847, 855 (Colo.App.2003). However, we review the trial court's application of mandatory sentencing laws de novo. *Juhl v. People,* 172 P.3d 896, 899 (Colo.2007) (stating that the statutory provision mandating concurrent sentences strips the court of its standard sentencing discretion).

The trial court must impose concurrent sentences when multiple convictions are based on the same act or series of acts arising from the same criminal episode, and are supported by identical evidence. *Id.;* § 18–1–408(2)–(3), C.R.S.2008. Thus, multiple convictions involving one victim, supported by identical evidence mandate that the trial court impose concurrent sentences. *Juhl,* 172 P.3d at 899.

We must determine if the two convictions were based on more than one distinct act and, if so, whether those acts were separated by time and place—enough to be "sufficiently separate." *See id.* at 901–02. Further, we are limited to reviewing the evidence rather than the elements of the offenses. *Id.* at 902. However, if the evidence can support no reasonable inference that the two convictions were based on acts that were separated by time or place, then the concurrent sentencing statute applies. *Id.* at 903.

Here, both attempted murder charges were based on the same criminal episode—the twenty-seven-mile police chase. However, there are three separate acts easily identifiable from the incident: (1) the first chase initiated when Torres sped away from Officer Lanigan at Sunburst Park; (2) the incident in the cul-de-sac; and (3) the chase that ensued when Torres left the cul-de-sac.

The evidence supporting the attempted second degree murder conviction involved Torres's driving toward Officer Lanigan in the cul-de-sac, establishing that he knowingly attempted to run him over and cause his death. In contrast, the evidence supporting the attempted first degree murder with extreme indifference conviction involved Torres's driving at high rates of speed through the park and residential neighborhoods and his failure to stop at intersections, stop signs, and red lights, placing numerous individuals' lives at risk.

Although the charges arose from the same criminal episode, we conclude that the charges were based on more than one distinct act, were sufficiently separate so as not to be based on identical evidence, and involved different victims. Therefore, the trial court did not err in imposing consecutive sentences.

## VII. Insufficient Evidence

Torres contends that the evidence was insufficient to establish that he took a substantial step or that he had the requisite mens rea to attempt to commit first degree murder with extreme indifference. We disagree.

We must view the evidence in the light most favorable to the prosecution and determine whether it is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt as to the elements of the charge. *People v. Martinez,* 165 P.3d 907, 913 (Colo.App.2007). The conviction must be upheld if there is substantial evidence to support it. *Mata–Medina v. People,* 71 P.3d 973, 983 (Colo.2003).

The determination of the credibility of witnesses is solely within the province of the jury; the trial court may not determine what specific weight should be given to pieces of evidence; a modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt; and the verdict may not be based on guessing, speculation, or conjecture. *People v. Sprouse,* 983 P.2d 771, 777–78 (Colo.1999). If there is evidence from which one may reasonably infer that the elements of the crime have been established, the evidence is substantial and sufficient. *People v. Montano,* 195 Colo. 420, 423, 578 P.2d 1053, 1055 (1978).

Attempted first degree murder with extreme indifference requires: (1) that a defen-

dant, (2) in the state of Colorado, (3) act with the kind of culpability otherwise required for commission of the offense, which is "an attitude of universal malice manifesting extreme indifference to the value of human life generally" and "knowingly," and (4) engage in conduct constituting a substantial step toward the commission of first degree murder with extreme indifference. §§ 18–2–101, 18–3–102(1)(d), C.R.S.2008.

This offense requires the mens rea of "knowingly," or in other words as applicable here, that Torres had an awareness that his conduct created a grave risk of death to others.

Evidence was presented that Torres:

- drove through a public park where at least two children were riding their bicycles,
- exceeded the speed limit through residential areas on a summer evening,
- did not stop or slow down at stop signs or red traffic lights,
- jumped curbs and crossed medians,
- drove eastbound in a westbound lane of traffic,
- forced cars to swerve to avoid hitting him, and
- forced pedestrians to jump out of the way of his oncoming SUV.

This evidence was sufficient to show that Torres acted knowingly, that is, that he was aware that his conduct created a grave risk of death to others. The fact that nobody was injured is not relevant to whether Torres was aware of the risk of death to others.

## VIII. Election of Acts and Unanimity Instruction

■ Torres contends that the trial court erred by not requiring an election of the act for the attempted first degree murder with extreme indifference charge and by not giving a unanimity instruction to the jury. We are not persuaded.

■ We review de novo whether the trial court was required to give a unanimity instruction. If a constitutional error is preserved, we will reverse unless the error was harmless beyond a reasonable doubt. *See*

*Thomas v. People,* 803 P.2d 144, 154 (Colo. 1990); *People v. Villarreal,* 131 P.3d 1119, 1128 (Colo.App.2005).

■ If the People do not elect to stand upon a specific act underlying an element of an offense, and there is a reasonable likelihood that the jurors may disagree upon which act a defendant committed, the trial court should give a specific unanimity instruction to the jury. *People v. Devine,* 74 P.3d 440, 443 (Colo.App.2003) (citing *Thomas,* 803 P.2d at 153–54).

■ However, a unanimity instruction need not be given when a defendant is charged with a crime encompassing incidents occurring in a single transaction. *Melina v. People,* 161 P.3d 635, 639–40 (Colo.2007) (citing *People v. Jacobs,* 91 P.3d 438, 443 (Colo. App.2003)). In *Melina,* multiple attempts to solicit prostitution were considered a single transaction of solicitation. In *Jacobs,* multiple communications between the defendant and a detective concerning a "prostitution date" also constituted a single transaction. *See also People v. Carey,* 198 P.3d 1223, 1236 (Colo.App.2008) (multiple communications constituted a single transaction).

Here, as discussed above, Torres's conduct and acts supporting the offense occurred during a single criminal episode-the twenty-seven-mile police chase. Therefore, a unanimity instruction was not required.

## IX. Conclusion

The judgment is reversed as to the reckless endangerment conviction, the sentence for that offense is vacated, and the case is remanded to the trial court to correct the mittimus accordingly. The judgment and sentence are affirmed in all other respects.

Judge ROMÁN and Judge LICHTENSTEIN concur.