2013 COA 160

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ruben PEREZ–HERNANDEZ, Defendant–Appellant.**

**Court of Appeals No. 08CA1701**

Colorado Court of Appeals, Div. V.

Announced December 5, 2013

**454**

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Britta Kruse, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE CARPARELLI

¶ 1 Defendant Ruben Perez–Hernandez was seventeen years old when the District Attorney's Office for the 18th Judicial District direct filed three felony and one misdemeanor charges against him in district court. Defendant contends that he had a liberty interest in being tried as a juvenile, and that due process required that he receive notice and a hearing before the prosecutor direct filed. On these premises, he contends that Ch. 122, sec. 6, § 19–2–517, 2006 Colo. Sess. Laws 422, the direct file statute in effect when he was charged (the former direct file statute) was unconstitutionally applied in his case and is unconstitutional on its face. Although the direct file statute has since been revised, defendant's contentions present issues that are of continuing relevance to juveniles' due process rights and the sufficiency of the charges.

¶ 2 Defendant also contends that the information that initiated the adult criminal proceedings against him was not sufficient to establish jurisdiction in district court, and that the court erred when it (1) did not require the prosecution to elect among alleged acts of possessing burglary tools and (2) declined to give a unanimity instruction. We affirm.

I. Procedural History

¶ 3 Defendant was adjudicated a juvenile delinquent in 2004 and 2005 for four delinquent acts, arising out of separate and distinct criminal episodes, each of which would have been a felony if committed by an adult.

¶ 4 In August 2007, police apprehended defendant, who was seventeen years old, together with two others, after they had broken into a house and stolen jewelry. With regard to defendant, the district attorney first filed a delinquency petition in juvenile court. She later filed an information in district court, and the juvenile court dismissed the delinquency petition thereafter. The information charged defendant with second de-

gree burglary of a dwelling, conspiracy to commit second degree burglary of a dwelling, possession of burglary tools, and theft of $500 or less.

¶ 5 Defendant filed motions challenging the district court's jurisdiction and the constitutionality of the former direct file statute. He argued that the information was insufficient to support a direct filing. The court summarily denied the motions and the case proceeded to a jury trial. The jury found defendant guilty of the charged offenses. The court sentenced defendant as an adult and imposed concurrent sentences of four years in the Department of Corrections (DOC) for burglary, two years for conspiracy, and one year for possession of burglary tools. The court imposed a sentence of six months in jail for the misdemeanor theft conviction, to be served concurrently with the DOC sentences. The court then suspended the sentence on the condition that defendant comply with an immigration hold and any subsequent deportation proceedings.

¶ 6 Before sentencing, defendant filed a motion virtually identical to his pretrial motion challenging the court's jurisdiction. The prosecutor's response was that the district attorney had direct filed on the grounds that defendant was a habitual juvenile offender. The court explained that the prosecutor had argued that defendant had four prior felony adjudications, and "that's exactly what the probation report also indicates." The court then denied the motion.

¶ 7 On appeal, defendant contends that:

1. the former direct file statute was unconstitutional on its face and as applied to him because it subjected him to adult criminal prosecution without notice and an opportunity to be heard in violation of his state and federal due process rights;

2. the district court did not have jurisdiction because the information did not allege the basis upon which defendant's juvenile case was "triable" in district court; and

3. the court violated his right to a unanimous verdict by not requiring the state to elect the act on which it relied for the possession of burglary tools charge

and by not instructing the jury that it was required to unanimously agree on the same act.

We address these issues in turn.

## II. Constitutionality of the Direct File Statute

¶ 8 Defendant contends that the former direct file statute is unconstitutional on its face and as applied to him because it subjected him to adult criminal prosecution without notice and an opportunity to be heard, in violation of his state and federal rights to due process. We disagree.

¶ 9 In his motion to declare the direct file statute unconstitutional, defendant argued that the former direct file statute

(1) was unconstitutionally vague;

(2) violated equal protection;

(3) constituted an unconstitutional classification based on age; and

(4) did not provide notice or any procedural mechanism that complied with due process.

Defendant has not presented the first three of these contentions on appeal. We, therefore, deem them abandoned, and address only his contention that the former direct file statute violated his right to due process. *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo.1990) (stating that issues not raised in the opening brief are deemed waived).

### A. Standard of Review

■■■ ¶ 10 We review the as-applied and facial constitutionality of a statute de novo. *Hinojos–Mendoza v. People*, 169 P.3d 662, 668 (Colo.2007). Statutes are presumed to be constitutional. *People v. McCullough*, 6 P.3d 774, 779 (Colo.2000).

■■■ ¶ 11 To succeed with an as-applied challenge, " 'a defendant has the burden of establishing the unconstitutionality of a statute, as applied [to him], beyond a reasonable doubt.' " *People v. DeWitt*, 275 P.3d 728, 731 (Colo.App.2011) (quoting *People v. Gutierrez*, 622 P.2d 547, 555 (Colo.1981)). A statute that is unconstitutionally applied may, nonetheless, be facially valid if there are conceivable circumstances in which it can be constitu-

tionally applied. *See, e.g., Independence Inst. v. Coffman,* 209 P.3d 1130, 1136 (Colo. App.2008) ("As-applied constitutional challenges attempt to invalidate a law only in the circumstances in which a party has acted or proposes to act; thus, a law that is held invalid as applied is not rendered completely inoperative.").

¶ 12 A party challenging the facial validity of a statute must prove that it is unconstitutional beyond a reasonable doubt. *People v. Vasquez,* 84 P.3d 1019, 1021–22 (Colo.2004). "A statute is facially unconstitutional only if no conceivable set of circumstances exist under which it may be applied in a constitutionally permissible manner." *People v. Montour,* 157 P.3d 489, 499 (Colo. 2007) (citing *Woldt v. People,* 64 P.3d 256, 266 (Colo.2003)).

## B. Due Process

¶ 13 The Fifth and Fourteenth Amendments of the United States Constitution guarantee that the government shall not deprive any person of an interest in "life, liberty, or property, without due process of law." U.S. Const. amend. V, XIV, § 1. With respect to the States, "the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "If there is no denial of a liberty or property interest, then the government does not have to provide procedural due process. Hence, to allege a procedural due process violation, an individual first must establish that he or she possesses a protected interest." *M.S. v. People,* 2013 CO 35, ¶ 10, 303 P.3d 102, 105. "A liberty interest can be created either by state law or by the Due Process Clause of the United States Constitution." *Id.* at ¶ 11, 303 P.3d at 105; *see Sandin v. Conner,* 515 U.S. 472, 479, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), *overruled on other grounds by Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

## C. People v. Thorpe

¶ 14 In *People v. Thorpe,* 641 P.2d 935 (Colo.1982), the prosecution direct filed a murder charge against the sixteen-year-old defendant. On appeal, the defendant challenged the constitutionality of the 1973 direct file statute. The defendant asserted that (1) the statute did not provide criteria to guide the prosecutor's decision; (2) the prosecutor could charge one juvenile as an adult and another similarly situated as a juvenile; and (3) this violated his right to equal protection of law. The defendant reasoned "that the decision of the prosecutor to charge a juvenile as an adult when there are no statutory guidelines and without a prior hearing cannot be constitutionally justified as a valid exercise of prosecutorial discretion." *Id.* at 938. He argued that he had a due process right to appear at a hearing, be represented by counsel, and be heard before the murder charge was direct filed.

¶ 15 The supreme court held that the doctrine of separation of powers prohibited it from intervening in or controlling the exercise of prosecutorial discretion "set out in Article III of the Colorado Constitution and inherent in the enumerated powers of the United States Constitution." *Id.* The court "decline[d] to require that a quasi-judicial hearing be held by the district attorney as a precondition to his determination that a child 14 years of age or older alleged to have committed a crime of violence defined as a class 1 felony shall be prosecuted in a criminal proceeding." *Id.* at 939. The court concluded that the direct file statute was constitutional on its face and as applied to the defendant.

¶ 16 Unlike the defendant in *Thorpe,* this defendant does not premise his argument on the absence of criteria or guidelines constraining the prosecutor's exercise of discretion. Instead, he relies on the criteria of the former direct file statute and contends that he was entitled to notice of the criteria upon which the prosecutor justified the direct filing, and a hearing as to whether those criteria were satisfied. He also relies on *Kent v. United States,* 383 U.S. 541, 556, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), arguing that he has a liberty interest in being tried as a

juvenile and that "waiver of [juvenile court] jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." *Id.*

### D.   Liberty Interest

¶ 17 In *Kent,* the Supreme Court applied the District of Columbia Juvenile Court Act, which granted the D.C. juvenile courts exclusive original jurisdiction in all juvenile cases. The Court concluded that a juvenile in the D.C: system had a "statutory right to the 'exclusive' jurisdiction of the [j]uvenile [c]ourt." *Id.* at 557, 86 S.Ct. 1045. Under the D.C. statute, to transfer a case to district court, the juvenile court was required to conduct a "full investigation" and waive its jurisdiction. *Id.* at 566, 86 S.Ct. 1045. The Court held that the juvenile had a statutory right to be tried in juvenile court, and thus, had a right to a hearing before the case could be transferred for trial in the district court. *Id.* at 561, 86 S.Ct. 1045.

¶ 18 Here, the question is whether the former jurisdictional statute granted juvenile courts exclusive original jurisdiction in defendant's case. To answer this question, we apply accepted principles of statutory interpretation.

### 1.   Statutory Interpretation

¶ 19  Statutory interpretation presents a question of law that we review de novo. *Clyncke v. Waneka,* 157 P.3d 1072, 1076 (Colo.2007). Our primary task when construing a statute is to give effect to the intent of the General Assembly. *Campbell v. Indus. Claim Appeals Office,* 97 P.3d 204, 207 (Colo.App.2003). To determine legislative intent, we interpret statutory terms in accordance with their plain and ordinary meanings. *Id.* Accordingly, we must give consistent, harmonious, and sensible effect to all parts of the statute and avoid an interpretation or construction that would render any language meaningless. *Id.; accord Well Augmentation Subdistrict v. City of Aurora,* 221 P.3d 399, 420 (Colo.2009). In addition, we do not ascribe a meaning that would lead to

an illogical or absurd result. *Frazier·v. People,* 90 P.3d 807, 811 (Colo.2004).

### 2.   The Former Direct File Statute

¶ 20 When defendant was charged in 2007, the applicable statute gave the juvenile court "exclusive original jurisdiction" in proceedings concerning "any child committing a delinquent act," "except as otherwise provided by law." Ch. 122, sec. 6, § 19–2–104(1)(a), 2006 Colo. Sess. Laws 1399 (the former jurisdictional statute). The former direct file statute was a law that provided otherwise.

¶ 21 The portion of the former direct file statute [1] at issue here provided as follows:

(1)(a) A juvenile may be charged by the direct filing of an information in the district court or by indictment only if:

. . . .

(V) The juvenile is fourteen years of age or older at the time of the commission of the alleged offense, has allegedly committed a delinquent act that constitutes a felony, and is determined to be an "habitual juvenile offender". For the purposes of this section, "habitual juvenile offender" is defined in section 19–1–103(61).

In 2007, section 19–1–103(61) stated: " 'Habitual juvenile offender', as used in section 19–2–517, means a juvenile offender who has previously been twice adjudicated a juvenile delinquent for separate delinquent acts, arising out of separate and distinct criminal episodes, that constitute felonies."

¶ 22 The former direct file statute also stated:

(2) Notwithstanding the provisions of section 19–2–518, after filing charges in the juvenile court but before the juvenile court conducts a transfer hearing, the district attorney may file the same or different charges against the juvenile by direct filing of an information in the district court or by indictment pursuant to· this section. Upon the · filing or indictment in the district court, the juvenile court shall no longer have jurisdiction over proceedings concerning the charges.

---

1. Laws 2012, Ch. 128, § 1, eff. April 20, 2012, deleted subsection (1)(a)(V), which is at issue    here.

This provision remains unchanged in the current direct file statute. § 19–2–517(2), C.R.S. 2013.

### 3. Juvenile Court Jurisdiction

¶ 23 Giving the words of the former jurisdictional statute their plain and ordinary meanings, we first conclude that the juvenile court had original and exclusive jurisdiction in some, but not all, proceedings concerning juveniles alleged to have committed delinquent acts. The former jurisdictional statute contained an exception for cases for which another law limited or removed that court's jurisdiction. The former direct file statute did just that. It permitted the prosecution to direct file criminal charges against juveniles in district court when specified criteria applied.

¶ 24 In addition, the former direct file statute addressed situations in which a district attorney first filed a delinquency petition in juvenile court, thereby invoking that court's jurisdiction, and later filed a criminal charge for the same conduct in district court. Under the former direct file statute, the district court filing automatically divested the juvenile court of jurisdiction.

¶ 25 Thus, under the former direct file statute, the General Assembly established circumstances in which juvenile defendants did not have a liberty interest in being tried as juveniles.

¶ 26 We are not persuaded that *Kent* requires a different conclusion. Unlike the D.C. statute at issue in *Kent*, the former juvenile court jurisdictional statute did not grant exclusive original jurisdiction to the juvenile court when the former direct file statute authorized the prosecution to direct file in district court. Also, unlike the D.C. statute, the former jurisdictional and direct file statutes did not require the juvenile court to: (1) conduct an investigation; (2) determine whether to transfer the case to district court; (3) conduct a hearing; or (4) enter findings and conclusions supporting a decision to transfer the case.

¶ 27 Accordingly, we conclude that the former jurisdictional and direct file statutes, when given consistent, harmonious, and sensible effect, and when construed to ensure that all language is meaningful, did not vest defendant with a liberty interest in being tried as a juvenile. Therefore, due process did not require that defendant be notified and given an opportunity to be heard before the district attorney direct filed in district court.

### E. Constitutionality

¶ 28 We conclude that the former direct file statute was not applied in violation of defendant's right to due process, and that the former direct file statute did not violate his right to due process on its face. *See Thorpe*, 641 P.2d at 939; *Myers v. Distr. Ct.*, 184 Colo. 81, 85, 518 P.2d 836, 838 (1974) (holding that a prosecutor has the "constitutional power to exercise his discretion" whether to direct file against a juvenile).

### III. District Court Jurisdiction

### A. Sufficiency of the Charge and Information

¶ 29 Defendant contends that the district court lacked jurisdiction over the charges because the information did not include the basis upon which the district attorney direct filed, and, thus, did not allege that the offense was "triable" in that court. We disagree.

### 1. Law

¶ 30 We review the sufficiency of a charge in an information de novo. *People v. Melillo*, 25 P.3d 769, 777 (Colo.2001).

¶ 31 "A person is subject to prosecution in this state for an offense which he commits … if … [t]he conduct constitutes an offense and is committed either wholly or partly within the state." § 18–1–201(1)(a), C.R.S.2013. An "information is sufficient if it can be understood therefrom … [t]hat the offense was committed within the jurisdiction of the court *or* is triable therein." § 16–5–202(1)(c), C.R.S.2013 (emphasis added). In particular, an information " 'is sufficient if it alleges sufficient facts to permit the accused to prepare an adequate defense and to assure that the defendant cannot be prosecuted again for the same crime.' " *Melillo*, 25 P.3d

at 778 (quoting *People v. Chavez*, 730 P.2d 321, 325 (Colo.1986)). These requirements are satisfied when the information tracks the statutory language of the essential elements of the crime charged. *Melillo*, 25 P.3d at 778; *see also* § 16–5–202(3), C.R.S.2013 ("[a]n information may be filed using the language of the statute defining the offense").

¶ 32 Under the former direct file statute, a juvenile could be charged by direct filing of an information in the district court when the charge alleged an offense listed in subsections 19–2–517(1)(a)(I), (II), or (III) of the former direct file statute (listed offenses). A juvenile could also be charged by direct filing based on his or her juvenile or criminal record, as specified in subsections 19–2–517(1)(a)(IV) and (V) of the former direct file statute. Here, defendant was charged based on his past record as a "habitual juvenile offender."

### 2. Analysis

¶ 33 An information is sufficient when it enables a reader to understand, among other things, "[t]hat the offense was committed within the jurisdiction of the court *or* is triable [in that court]." § 16–5–202(1)(c) (emphasis added). Because the statute is phrased in the disjunctive, an information must satisfy only one of the stated conditions, not both.

¶ 34 The district attorney filed the information in the Arapahoe County District Court. In pertinent part, Count 1 of the information alleged second degree burglary of a dwelling, specifically that on or about August 23, 2007, defendant burglarized "the dwelling of [KG] and [ENA], [street address], with the intent to commit therein the crime of Theft." Counts 2 and 3 alleged that, on the same date, defendant conspired to commit second degree burglary, and possessed burglary tools, respectively.

¶ 35 Defendant does not contend that the information is not sufficient to enable it to be understood that the offense "was committed within" Arapahoe County.

¶ 36 We conclude that the information was sufficient to enable it to be understood that

the offense was committed within the jurisdiction of the Arapahoe County District Court. Therefore, the information was not required to also allege that the offense was triable in the district court.

¶ 37 Giving the terms of section 16–5–202(1)(c) sensible effect that is consistent and harmonious with section 18–1–201(1)(a), we conclude that the information was sufficient to allege that the offense was committed within the jurisdiction of the Arapahoe County District Court. Accordingly, we conclude that the charge satisfied the requirements of section 16–5–202(1)(c).

¶ 38 We reject defendant's contention that the holding in *People v. Ball*, 22 P.3d 574 (Colo.App.2001), requires a different conclusion. The decision there turned on the application of the direct file statute when the basis for direct filing was that the juvenile committed a "crime of violence." *See* § 19–2–517(1)(a)(II)(A), C.R.S.2000 (the former direct file statute).

¶ 39 In *Ball*, a witness saw defendant break into a residence. The police arrived and saw the defendant running from the back door and gave chase. The defendant was carrying a pistol. In the *Ball* division's decision, there is no indication that the defendant confronted anyone in the residence, used the pistol, or threatened to use the pistol he possessed. The district attorney charged the defendant with first degree burglary in violation of section 18–4–202(1). *Id.* at 575. One of the elements of the charge was possession of a deadly weapon. *Id.* The first degree burglary charge did not allege and, consequently, did not require the prosecution to prove, that the defendant had used, or had possessed and threatened to use, the weapon. Nor did it require proof that the defendant had caused serious bodily injury.

¶ 40 First degree burglary is not an offense listed under subsections 19–2–517(1)(a)(I), (II), or (III), the direct file statute. The listed offenses automatically allow the prosecution to direct file. They include crimes of violence. First degree burglary is a crime of violence only when the offender used, or possessed and threatened the use of, a deadly weapon, or caused serious bodily

injury. *See* § 16–11–309 (2)(a)(I), C.R.S.2000 (the statute under which Ball was charged).

¶ 41 The information in *Ball* did not allege that the defendant had used a deadly weapon, had possessed and threatened to use a deadly weapon, or had caused serious bodily injury. Thus, it did not allege a qualifying crime of violence. Moreover, it appears there was no evidence to support such allegations. The opinion in *Ball* does not reflect that the district court had direct file jurisdiction based on the defendant's prior record. Thus, neither the offense nor the defendant's prior record satisfied the conditions of the direct filing statute and there was no basis for district court jurisdiction.

¶ 42 Contrary to defendant's argument, the decision in *Ball* was premised on lack of jurisdiction under the direct file statute, not on the statutory requirements regarding the form of an information. Indeed, the division did not mention section 16–5–202, and did not conclude that the information was insufficient under that provision. The case turned on whether the offense charged was one for which the prosecution had the power to direct file and for which the court had jurisdiction.

¶ 43 Unlike in *Ball,* district court jurisdiction under the direct file statute here was based on defendant's prior record, and was not based on the nature of the charged offense. And, unlike the record in *Ball,* the record here demonstrates that the district court had jurisdiction based on defendant's prior record.

¶ 44 We conclude that the charge and the information were sufficient and that the district court had jurisdiction over defendant's case.

### B. Defendant's Jurisdictional Motion

¶ 45 We have concluded that defendant was not entitled to due process notice and a hearing before the prosecutor direct filed the charges. However, after the prosecutor filed the charges, defendant was entitled to the same due process rights afforded to all criminal defendants. Defendant contends that the district court erred when it denied him a hearing regarding that court's jurisdiction.

Although we conclude that the court erred, we also conclude that the error was harmless beyond a reasonable doubt.

¶ 46 Shortly before trial, defendant asked the court to dismiss the case for lack of jurisdiction. He argued that the prosecution had not charged him with an offense for which direct filing was permitted, and that neither the complaint nor the information included a statement of circumstances permitting direct filing. The trial court denied the motion without requiring the prosecution to disclose the prior record upon which it was relying.

¶ 47 When defendant renewed the motion after the jury verdict and before sentencing, the prosecution volunteered that it had direct filed based on the "habitual juvenile offender" provision. The court stated that defendant's record showed that he had been convicted of four acts of delinquency constituting acts that would have been felonies had he been tried as an adult, and that the direct filing was proper.

¶ 48 When a juvenile is charged as an adult, he or she has the same due process rights as any other criminal defendant. This includes the right to challenge the court's jurisdiction. *Flakes v. People,* 153 P.3d 427, 437 n. 18 (Colo.2007) (noting that a juvenile who is tried as an adult is "afforded the full protection of adult due process standards"); *see also D.W. v. Dist. Court,* 193 Colo. 194, 564 P.2d 949 (1977). The defendant in *D.W.* challenged the district court's jurisdiction on the ground that his prior adjudication was invalid. There, the prosecutor had based the direct filing on the ground that the defendant had a delinquency adjudication within two years of the charged offense. *Id.* at 195–97, 564 P.2d at 950–51. The supreme court ruled that the prior adjudication was invalid, and, as a result, concluded that the district court did not have jurisdiction. *Id.* at 198, 564 P.2d at 952.

¶ 49 Here, we conclude that the district court erred when it denied defendant's jurisdictional motion without requiring the prosecution to disclose the evidence of defendant's prior record. However, the record shows that defendant had at least four

prior adjudications of delinquencies for crimes that would have constituted felonies had he been tried as an adult, defendant did not dispute their validity when they were presented to the court before sentencing, and he does not now dispute their validity on appeal. In a hearing on bond reduction, the prosecutor said he had found four prior adjudications against defendant, "one for attempted theft and first degree criminal trespass, one for felony theft, and one for felony burglary." At the next hearing, the prosecutor mentioned these adjudications again, in addition to two more. Defendant did not dispute the existence or validity of these adjudications, and the adjudications support the trial court's ultimate determination that defendant was a habitual juvenile offender. Consequently, we conclude that the direct filing was proper under the former direct file statute, the district court had jurisdiction, and, although the court erred when it did not address defendant's jurisdictional motion before trial, the error was harmless beyond a reasonable doubt. *See, e.g., People v. Loyd,* 902 P.2d 889, 890 (Colo.App.1995) (applying harmless error test to a due process issue).

## IV. Election of Acts and Unanimity Instruction

### A. Facts

¶ 50 Defendant contends that the district court erred when it did not require the prosecution to elect which act supported the charge of possession of burglary tools and did not give a unanimity instruction. We disagree.

¶ 51 The information charged defendant with one count of felony possession of burglary tools and named "gloves and a sock" as the tools at issue. An officer testified that he saw two of the three burglars running from the police remove black knit cotton gloves. When searched, one man, not the defendant, was wearing one black knit glove.

¶ 52 Two other officers were present when defendant was searched incident to his arrest. Both testified at trial. One testified that he held defendant at gunpoint while the other officer handcuffed and searched him and he "watched [the other officer] reach into

[defendant's] pocket, and had a sock wrapped up in a wad, and it was full of jewelry." The other officer testified that he conducted the search incident to arrest, felt a bulge in defendant's pocket, and that the bulge was "a large clumped together bundle of jewelry." He did not recall whether the jewelry was in a sock and he could not identify the sock when the prosecutor showed it to him.

¶ 53 Before closing arguments, defendant asked for a unanimity instruction or an entry on the verdict form to identify the item the state was relying on for a conviction. The district court denied the requests.

¶ 54 During closing arguments, the prosecution asserted that either the sock or the glove could support a conviction for possession of burglary tools. During their deliberations, the jurors asked, "[d]oes the tool have to be in the possession of the defendant?" After consulting with counsel, the court answered in the affirmative. The jury found defendant guilty of possession of burglary tools.

### B. Law

¶ 55 When the prosecution presents evidence of multiple transactions, any one of which would constitute the offense charged, and there is a reasonable likelihood that jurors may disagree about which transaction the defendant committed, there is a risk that a conviction may result from some jurors finding the defendant guilty of one act, while others convict based on a different act. *People v. Rivera,* 56 P.3d 1155, 1159–60 (Colo. App.2002). In that situation, the district court "must either require the prosecution to elect the transaction on which it relies for conviction, or instruct the jury that to convict the defendant it must unanimously agree that the defendant committed the same act." *Id.* at 1160 (citing *Thomas v. People,* 803 P.2d 144, 152 (Colo.1990)); *see also Melina v. People,* 161 P.3d 635, 639 (Colo.2007) ("The People may be compelled to elect the acts or series of acts on which they rely for a conviction.").

¶ 56 In contrast, a unanimity instruction is not required when a defendant is charged with a crime encompassing incidents

occurring in a single transaction. *Melina*, 161 P.3d at 639–40 (citing *People v. Jacobs*, 91 P.3d 438, 443 (Colo.App.2003)); *People v. Torres*, 224 P.3d 268, 278 (Colo.App.2009). "In *Melina*, multiple attempts to solicit prostitution were considered a single transaction of solicitation. In *Jacobs*, multiple communications between the defendant and a detective concerning a 'prostitution date' also constituted a single transaction." *Torres*, 224 P.3d at 278. In *Torres*, a unanimity instruction was not required for attempted first degree murder because the defendant's "conduct and acts supporting the offense occurred during a single criminal episode—the twenty-seven-mile police chase." *Id*. In addition, jurors are not generally required to agree about the evidence or theory by which a particular element is established. *See People v. Vigil*, 251 P.3d 442, 447 (Colo.App. 2010) (concluding that jurors did not need to unanimously agree on which theory supported a single conviction of theft).

¶ 57 Similarly, the prosecution is not required to specify which acts serve as the basis for the offense when the acts occurred in a single transaction. *See People v. Collins*, 730 P.2d 293, 301 (Colo.1986); *Jacobs*, 91 P.3d at 443. In addition, when a defendant is charged with alternative means of committing the same offense, as opposed to two distinct offenses, and evidence is presented regarding a single transaction, the prosecution is not required to select a single alternative. *People v. Thurman*, 948 P.2d 69, 71 (Colo.App.1997) (citing *People v. Wright*, 678 P.2d 1072 (Colo.App.1984) (finding election not required when defendant could be found guilty, in a single transaction, of either selling or dispensing controlled substances)).

¶ 58 We review a district court's determination whether to grant a requested unanimity instruction de novo. *Torres*, 224 P.3d at 278. If the error is preserved, we will reverse unless the error is harmless beyond a reasonable doubt. *Id*.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

C. Analysis and Conclusions

¶ 59 Here, defendant was ·charged with possession of burglary tools on one occasion related to one burglary. The evidence included items that were in defendant's possession during this single transaction. Accordingly, neither an election nor a unanimity instruction was required. We conclude the district court did not err.

¶ 60 The judgment is affirmed.

JUDGE TERRY and JUDGE PLANK * concur.